FILED

2012 Aug-03  AM 09:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAYNE M. MANKIN,            ]
Plaintiff,                  ]
                            ]
    vs.                     ]   2:11-CV-3060-LSC
                            ]
MICHAEL J. ASTRUE,          ]
Commissioner of Social Security,  ]
Defendant.                  ]

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, Jayne M. Mankin, appeals from the decision of the Commissioner

of the Social Security Administration ("Commissioner") denying her application for

Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

Ms. Mankin timely pursued and exhausted her administrative remedies and the

decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3).

Ms. Mankin was forty-one years old at the time of the Administrative Law

Judge's ("ALJ's") decision, and she has a high school education.  (Tr. at 22.)  Her

past work experiences include employment as a catalyst technician, drill press

operator, shipping worker, production worker, and waitress.  (Tr. at 22, 116.)  Ms.

Mankin claims that she became disabled on January 15, 2007, due to rheumatoid arthritis, and pain in her wrists, hands, fingers, and knees. (Tr. at 67, 105, 109.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.   See 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*.  The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she

will be found disabled without further consideration. *Id*. If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id*. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id*.

Applying the sequential evaluation process, the ALJ found that Ms. Mankin meets the nondisability requirements for a period of disability and DIB and was insured through the date of her decision. (Tr. at 19.) He further determined that Ms. Mankin has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id*.) According to the ALJ, Plaintiff's scleroderma is a severe impairment based on the requirements set forth in the regulations. (*Id*.) However, he found that

this impairment neither meets nor medically equals any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 20.) The ALJ determined that the plaintiff has the residual functional capacity to perform a maximum range of medium work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to limitations including only occasional fine fingering and gross handling, as well as being limited to occasional walking and standing. (Tr. at 20-21.)

The ALJ accepted the vocational expert's testimony that, given Ms. Mankin's RFC, she is unable to perform any of her past relevant work. (Tr. at 22.) She is a "younger individual," and she has "at least the equivalent of a high school education," as those terms are defined by the regulations. (*Id*.) He determined that Plaintiff has "no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case." (*Id*.) The ALJ found that jobs exist in significant numbers in the national economy that Ms. Mankin can perform. (*Id*.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 23.)

II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*   "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.   No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."   *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).   Moreover, failure to

apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748

F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Ms. Mankin alleges that the ALJ's decision should be reversed and remanded

for two reasons. First, she believes the ALJ's residual functional capacity ("RFC")

findings are not based on substantial evidence. (Doc. 7 at 5.) Second, she claims that

the ALJ failed to develop the record because he should have gotten a second

consultative examination ("CE") after Plaintiff reported hand pain. (Doc. 7 at 9.)

A.    Residual Functional Capacity

Plaintiff first argues that the ALJ's RFC findings are not based on substantial

evidence because the only definitive statement about Plaintiff's RFC was by a

non-medical state agency "consultant." (Doc. 7 at 6.) Specifically, Plaintiff argues

that the ALJ did not have in the record any "RFC opinions from treating, examining,

or reviewing physicians." (*Id.*)

The assessment of a claimant's RFC is "based on all relevant evidence in the

claimant's case record," and is not simply a doctor's opinion. 20 C.F.R.

§ 404.1545(a)(1). An RFC is not a medical assessment, and the responsibly for

deciding issues such as a claimant's RFC rests with the ALJ. 20 C.F.R. § 404.1527(e),

404.1546(c); S.S.R. 96-5p.  His decision must be based, not only upon the medical evidence, but upon all of the evidence in the record. S.S.R. 96-8p, available at 1996 WL 374184. Further, while medical opinions are to be weighed by the ALJ, an RFC finding will not be invalidated due to the absence or discrediting of a medical opinion. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

Plaintiff argues that the ALJ is required to "review and accord weight to medical opinion[s]," and that a "[medical source opinion] of some kind is crucial to the analysis of functioning based on the Medically Determinable Impairments." (Tr. at 7.) However, there is no requirement for an RFC assessment from a medical examiner to be in the record in order for the ALJ to determine an RFC finding, because that decision belongs to the ALJ. 20 C.F.R. § 404.1527(d)(2). In making his determination, the ALJ reviewed Plaintiff's medical records and the opinion of Dr. Marlin Gill. (Tr. at 19-22.)

The ALJ gave considerable weight to Dr. Marlin Gill, the disability examiner who conducted Plaintiff's CE on September 30, 2008. (Tr. at 22, 156-61.) Dr. Gill's records show that although Plaintiff complained about leg and back pain, her gait was normal and she could walk unassisted. (Tr. at 156-60.) Plaintiff's back, hips, and legs were non-tender and strength was 5/5 bilaterally. (Tr. at 156-60.) Plaintiff had no

swelling in her legs or hands, and Dr. Gill found nothing remarkable during the CE or in Plaintiff's past medical record. (Tr. at 156-57.) Dr. Gill's assessment of rheumatoid arthritis was based on Plaintiff's self-report; however, when lab testing was done in 2010, the plaintiff proved to be negative for rheumatoid arthritis. (Tr. at 157, 177.)

Plaintiff alleges that because the "ALJ did not address postural capabilities or restrictions" within the RFC assessment, the ALJ did not consider it. (Doc. 7 at 6.) However, there is nothing in the record to suggest Plaintiff would have postural restrictions beyond the ALJ's determination of the plaintiff's need to sit and stand at the prescribed intervals. (Tr. at 21.) Plaintiff has not pointed to any evidence to suggest that she has postural problems the ALJ overlooked or ignored. When Dr. Gill assessed the plaintiff, he made no statements that would suggest postural problems, and during the exam the plaintiff's posture capabilities posed no problem. (Tr. at 157.) Dr. Gill noted that Plaintiff could squat all the down, that her back looked normal, and that she could "bend and twist well." (Tr. at 157.) The ALJ made no specific remark about the postural capabilities of the plaintiff because nothing remarkable was in the evidence about the plaintiff's postural capabilities.

The ALJ gave more limited weight to the disability specialist, Mark Swink. (Tr. at 22.) Mr. Swink completed a physical summary based on the objective medical

evidence, and concluded that Plaintiff had no severe impairments, while the ALJ

found the Plaintiff suffers from scleroderma, which is a severe impairment. (Tr. at 22,

161.) As the Plaintiff notes, the ALJ made this determination based upon lab work in

2010, showing Plaintiff tested positive for a high level of Anticentromere B antibodies:

more than 8.0, with normal levels being less than 1.0. (Doc. 7 at 8; Tr. at 177-78.)

Plaintiff's levels were consistent with a finding of scleroderma—exactly what the ALJ

found when he made his determination. (Tr. at 20.) However, the ALJ found that

Plaintiff's scleroderma was not severe enough to be disabling. (Tr. at 21.) Plaintiff

received no treatment for it from 2005 -10, which the ALJ took as evidence that the

scleroderma was not as disabling as Plaintiff alleged. (*Id.*) Although it is true the ALJ

did not mention the lab results in her report, she did mention the results at the

hearing, and it is clear from the ALJ's determination the lab results were considered

by the ALJ. (Tr. at 19, 37.)

Plaintiff also contends the ALJ's report is "internally inconsistent" with regard

to the RFC assessment, and asserts that the ALJ reported that there was "nothing in

the medium range [Plaintiff] could perform." (Doc. 7 at 6.) However, the ALJ found

that the plaintiff had the RFC to perform medium work. (Doc. 7 at 6; Tr. at 22.) The

sentence Plaintiff attributes to the ALJ begins with "[t]he vocational expert testified."

(Tr. at 22.) Contrary to Plaintiff's allegations, there is no internal inconsistency. The vocational expert was given four different hypotheticals. (Tr. at 61-63.) Plaintiff quotes the vocational expert's response to the most limiting of the those hypotheticals, which was that there were not a significant number of jobs in the medium exertional range of work that Plaintiff could perform. (Tr. at 22) However, after looking at the totality of the evidence, the ALJ determined that Plaintiff could perform some work in the medium exertional range with the restrictions described in the RFC. (*Id.*) The vocational expert testified that an individual limited to the maximum of a medium range of work, limited to occasional fine fingering and gross handling, and limited to occasional walking and standing, would be able to perform the requirements of representative occupations such as gate guard, and that a significant number of such jobs exist in the national economy. (Tr. at 64.) For these reasons, the ALJ's RFC findings were based on substantial evidence.

B.      Duty to Develop the Record

Administrative hearings under the Social Security Act are not adversarial proceedings. *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ has the duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). In any case, there

must be a showing of prejudice in order to trigger remand for reconsideration; the record must reveal "evidentiary gaps which result in unfairness or clear prejudice." *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (quoting *Ware*, 651 F.2d at 413).

In all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987), *Doughty v. Apfel*, 245 F.3d. at 1278, 42 U.S.C. § 423(d)(5) ("[A]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). The regulations also establish that the claimant's burden is to provide the relevant medical and other evidence he believes will prove his alleged disability. *See* 20 C.F.R. § 404.1512(a) and (c). Moreover, the claimant's burden is to provide a medical record that is complete, and if he or she fails to do so, the ALJ will make a decision based on the evidence of record. *See* 20 C.F.R. §§ 404.1513(e), 404.1516.

Plaintiff argues that the CE performed by Dr. Gill is inadequate because Plaintiff's condition has changed since that examination. (Doc. 7 at 9.) Plaintiff alleges the pain in her hand began in September 2009. (Tr. at 175.) On January 15, 2010—one year after the CE—Plaintiff was prescribed medication to relieve hand pain that

radiated to the forearms. (Tr. at 176.) Plaintiff also points out that the ALJ stated at the hearing that it was "difficult to assess where [the plaintiff] really [is]" because there is little medical history. (Tr. at 66.) Plaintiff argues the ALJ should have ordered another CE to fully develop the record pursuant to 20 CFR 404.1519(a). (Doc. 7 at 9.)

The ALJ may request that Plaintiff the have an additional CE only after the ALJ has given "full consideration to whether the additional information needed . . . is readily available from the records of [the claimant's] medical sources." 20 C.F.R. § 404.1519a(a)(1); *Doughty v. Apfel*, 245 F.3d 1274, 1280-81 (11th Cir. 2001).

The ALJ took into consideration the lab work and the plaintiff's pain in her hands when he stated the restrictions in Plaintiff's RFC. (Tr. at 20-21.) Furthermore, the ALJ looked at all of the medical evidence presented to her and discovered the plaintiff had been to the doctor several times from 2005-10, but never due to scleroderma, despite her arguments that it was disabling. (Tr. at 21.) The ALJ found that the fact that Plaintiff's scleroderma has been unattended for five years "suggests this condition is not as severe as [Plaintiff] has alleged." (Tr. at 21.) The ALJ also considered Plaintiff's "documented longitudinal medical record history," and found that while Plaintiff may not be able to perform all types of work activity, the evidence failed to show that the plaintiff was disabled to the extent of being unable to work. (Tr.

at 22.) Therefore, the ALJ did not fail in her duty to develop the record.

IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Mankin's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this $\underline{3}^{\underline{rd}}$ day of <u>August 2012</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458